I'm a lawyer representing plaintiff Falcon, Stainless, and appellant and co-counsel Graham Lipsmith. This incorporates too shy to come up here. If I could reserve six minutes for rebuttal, please. Sure. This is a case where the jury unanimously found for Falcon on all six of its claims. Counsel, I could see the strength of your argument and I could. Well, let me put it differently. If that's the case, I could submit right now. Now you've got to convince the other two. I could see the strength of your argument on judgment as a matter of law, but I have trouble seeing why the judge can't order a new trial. The standards are pretty different. And this question is important to me, too. So the question is, what relief are you seeking here? We're seeking the reinstatement of the entire verdict, Your Honors. So with respect to with respect to the district judge's finding and as to a number of the claims she didn't grant JMOL or he didn't grant JMOL, but rather but rather simply a new trial as against the weight of the evidence. Correct? Correct. Don't we review that for abuse of discretion? Yes, Your Honors. And with respect to the JMOLs, the judge made an alternative finding that if I'm wrong, then I find these against the weight of the evidence. These are only appealable because you got the JMOL here. If the judge had just done that on every count, you wouldn't have been able to appeal because an order granting a new trial for that reason is not appealable. So tell me how you mount that heavy burden with respect to a new trial. Like Judge Kleinfeld, I understand your JMOL arguments, and I may or may not agree with them. Assuming I do, aren't we sort of obligated under the circumstance this is the judge who heard the evidence, made credibility determinations, weighed the evidence as the judge is entitled to do in a new trial context, and said, you know, when you put all this together, it just doesn't add up to the amount of damages that arose. I think the best – I may have made some mistakes and rulings along the way. I'm not sure if they were errors or mistakes. I think the best thing to do is to hit the restart button and start this over again. How do we overturn that? Your Honor, when – It's the center of this case for me. Sure. When the new trial order is conditional upon the JMOL insufficient evidence standard, then this Court takes a more stringent review of the new order, new trial order from the district court. But as to the four of the counts, it was not. For several of the counts, it was not contingent on the JMOL. Well, actually, it was four that were on the JMOL and two that were not. Right. Two were not. I don't know that it depends on the JMOL or not. I mean, you had some evidence of confusion on the part numbers and some arguable evidence about the weakness of the mark. But I looked at the mark, and to me, their mark doesn't look like your mark. It looks like Rhino's mark and Falcon Stainless's mark just look different on the bolts and whatnot. And the order numbers, the part numbers are different, too. I can't see why she can't take the same evidence and say, as a matter of discretion, the evidence was so overwhelming for Rhino that Falcon's going to have to prove it again, even if my judgment as a matter of law doesn't stand. Well, on the issue of whether the Falcon F in the Diamond mark was a strong mark or not, she clearly applied the erroneous standard of law when she cited this Courts of Mondo case for the proposition that it was suggestive. The mark is not suggestive of the product. Let's assume for purposes of our discussion that she erred on the judgment as a matter of law. We're just assuming that for the purposes of discussion. Why couldn't she use the same evidence and the same review of the same evidence to say, even so, there should be a new trial? Because the actual reason why we can overturn or you can overturn her new trial, her conditional new trial order, is that it was based on an erroneous interpretation of the law based on the Diamond F mark. That I'm having difficulty with. Let's assume I agree with you, that there was enough under sleek craft for you to get to the jury on your Lanham Act claims. The judge looks at it and says, you know, this is a pretty weak case. I'm looking at the mark, and they really don't look the same. You have some of the sleek craft factors, but not all of them. So to the extent I erred in concluding that you lose as a matter of law, I kind of think this judgment is flawed in several ways. And I'm exercising my discretion to weigh the evidence and send it back to the jury. I'm still not sure I've heard a satisfactory answer of why she abused her discretion. I keep saying she because I do that as a default matter. Is it a she in this case? Why she abused her discretion in doing that? Well, it's also an abuse of discretion if her rulings are illogical, implausible, or without support and inferences that may be drawn from the facts. Okay, that's the legal standard. So tell me why what she did in this case was illogical, implausible, given that we review for abuse of discretion. With the diamond F marks, Your Honor, there were numerous witnesses that testified that they recognized the diamond F mark immediately as Falcone's fault. Well, no, and therefore I'm inclined, I think as Judge Kleinfeld may have indicated, to think that maybe you did have a good enough case to get to the jury on that. But there's lots of other stuff that cuts the other way. And the judge says, when I weigh all this, and I'm the only one who was here and heard it all, I would have decided the other way, and that's enough for me to think it's against the weight of the evidence. Why is that a legal error? Because, Your Honor, the starting point is to determine whether this diamond F mark is a strong enough mark to be protectable. And she said that it's suggestive when it's actually not. No, and let's say I disagree. For purposes of this question, I disagree. It's a protectable mark. That doesn't mean you win, because Sleecraft has, what, 177 factors to be measured. Tell me why, if it is a protectable mark, she abused her discretion in saying, after hearing all this evidence and considering my rulings and everything else, I'd like a do-over. Why did she abuse her discretion in doing that? Because the mark had been in use for 20 years. The defendants were former agents and were fully aware of the mark. When they set off to start their own competing company, they should have taken all steps to avoid any likelihood of confusion. The fact that they were able to later on change their trademark to an R in the triangle shows that they could have done that from the beginning to avoid this confusion, but they set out to cause this confusion, and that's why the Court's interpretation of the facts that the jury heard is clearly illogical and implausible. Let me ask you this. I don't see that as a matter of logic. It looks to me like it's just weighing evidence. Because this Court in DSPT International. Logic is why A squared plus B squared equals C squared on an equilateral. Right. This Court in DSPT International said that there are three ways to determine the likelihood of confusion. One would be with survey evidence. The second one would be with actual confusion evidence, which we have here. And the third one would be to submit this issue to the trier of fact and let the trier of fact decide whether there's going to be a likelihood of confusion. Let me ask you. Let me get one. Let's assume you're right about all of the above. She says, I made two other mistakes in this trial. I should have given an instruction that it's not against the law to knock off products, and that permeated this entire case. And somewhere along the way, the unclean hands defense got removed when it should have been in the case. Those two things alone, regardless of anything else, those two things alone justify a new trial. What's your answer to that? Well, the jury instruction is reviewed de novo, and defendants put on evidence that we didn't have a patent. We never, I think the Court even finds that we never alleged that we were pursuing a patent. That's not her point. Her point was it's a correct statement of law that I should have told the jury so they wouldn't let this red herring overtake the whole case. But her point was that we kept referring to this product as a knockoff product, and that's why she should have given this patent charge. And you did refer to it a couple of times. And that's true, because if I see somebody walking down the street with a Louis Vuitton bag, I say, hey, that's a Louis Vuitton knockoff. It's an accurate description, but I think the judge was saying something different. She was saying, look, I think now, having sat through this trial, the jury may have based its verdict on an issue that it shouldn't have based it on, which is that this was a knockoff. They were entitled to knock off the product. They just weren't entitled to violate the trademark laws or other statutory provisions. And I'm afraid, given the repetitive number of times plaintiff's counsel accurately referred to this as a knockoff, that I should have told the jury knocking off is fine. And on clean hands, you know, maybe I confused the jury because it was in the special verdict and I didn't reiterate again my instruction on clean hands, barred relief. And so given all that and given the closeness of the case, the district judge says, I think we ought to do this again. I think that's a fair summary of what she did. Why is that wrong? I understand the judge may not have erred by not giving the argument. We wouldn't reverse her for not giving that argument. And I think unclean hands was still submitted to the jury. But she's looking at this thing holistically and says, I think we may have had a miscarriage of justice here. Some of it's my fault. Some of it's because the evidence is pretty close. 59 lets me fix this by starting again. Again, tell me why abusive discretion. Don't tell me what the standard is. Tell me why that's so clearly wrong that we ought to say to the district judge, no, no, you were wrong. Let the jury verdict stand. Because this unanimous jury, Your Honor, took five dates to deliberate with all this evidence that was presented over three weeks. After that, I've never seen this done before, but on the jury verdict, they specifically said that we, the jury, believe the hand wrote this in on the jury verdict. We, the jury, believe that RINO should be forced to change its SWC trademarks and its Diamond S trademark. That may have been the product of improper instruction. That's focusing on the trademarks alone, Your Honor. And defendants, time after time, time after time, pounded into every witness. Well, this wasn't a patented product, was it? No, it wasn't a patented product. They could have copied it. Yes, they could have copied it. That wasn't the problem. They copied it, but then used thinner metal, and that's how they started with this whole unfair competition plan. The law was it's perfectly okay for a company to make a cheap copy of some really good stuff, so long as they don't pass their cheap copy off as the really good stuff. For example, it was perfectly okay for the Soviets to sell a camera called the Fed that looked like a Leica, and it was obviously an imitation Leica. It used similar technology, except it was a piece of garbage. But they didn't call it a Leica. They called it a Fed, so that was okay. I thought that was the law, and I thought the judge did not make it clear to the jury that that was the law, that the jury could very well have thought that making cheap junk that looks like or is copied from some good stuff is against the law, even if it's not like the knockoff Louis Vuitton bags that really do look just like the Louis Vuitton bags, and if nobody knew you bought it on Times Square, they might think it was one. If the only thing that they'd done was copy the form of the product, that wouldn't have been the case. What they did was copy the form of the product. Did she tell the jury that it was okay to make a cheap copy of a product, so long as it didn't pass itself off as the good stuff? Yes. The jury heard three weeks of evidence. I didn't ask about the evidence. I asked about what the judge instructed the jury. Yes, she did instruct the jury in the jury instructions that it was okay to copy this product. Tell me where in the jury instructions. You were going to ask me that? That's okay. We can look. You're going to save some time for rebuttal, so you can tell me when you got it. Thank you. In fact, you wanted to reserve six minutes, and you're down to six. Thank you, Your Honor. Thank you. I'm pleased to report Robert Lawrence on behalf of the Apolles, Rino, Harry Rieger and John Novella. I wonder if you could speak up just a bit. Yes, Your Honor. Robert Lawrence on behalf of the Apolles, Rino, Harry Rieger and John Novella. It will be helpful to me if you could focus on the flipside. of the argument we're asking your opponent about. I take it that you're, what you want to do is, tell me what you want us to do first. Ideally, what do you want the last line of the opinion to say? I would like the court to affirm the entire district court opinion. Okay. And so as to the new trial orders, you're fine, obviously. You're not seeking to do anything with respect to the new trial orders except to affirm them. That is correct. So let's go to the JMOLs. And I'd like you to try to defend the JMOLs for me. And here's my difficulty with the JMOL, at least as to the mark. Not as to the part numbers, but as to the mark. There's, what, eight sleep craft factors? There are. And some cut in your favor and some cut in the other side's favor. And the judge says, runs through the ones that cut in your favor and says, I'm really persuaded by those, but doesn't really treat very much the ones that cut in the other side's favor. Proximity, similarity of marketing, et cetera, et cetera. Why isn't that enough to get to the jury? And that really goes to all the JMOL claims. Why isn't that enough to get to the jury? Well, I think you have some of the sleep craft factors that balance on one side, some on the other. Even if the balance is, as the judge eventually concludes, much in favor of you, why isn't that enough to get to the jury? Well, the sleep craft test is supposed to be a flexible test. And that implies to me that it's normally one that you say, finder of fact, here's all the facts. Tell me how you come out. I would agree that that usually is the way it would work. But I think in this case, what Judge Stotler concluded was that the important factors weighed so heavily in favor of RINO that as a matter of lie, the jury was not. And you've put your finger on what troubles me here. To my reading, what the judge really did was say, boy, if I was on the jury, I would have found it in your favor. And that's a good reason for a new trial. But I'm not sure it's a good reason for a JMOL. Didn't they have at least some facts from which a jury could conclude that you had engaged in a Lanham Act violation with respect to the mark? Now, put aside the part numbers for a second. I would agree that the court said, yes, some of the sleep craft factors came down on the side of foundation. The same people who had been marketing their product were marketing yours. They went to the same customers. It was the same market. It was very close in time. There was some evidence of confusion. It may not have been convincing, but people did take the stand and say, yeah, I thought I was buying a Falcon. Is that true? Did anybody say they thought they were buying a Falcon? No, that is not true.  There were, Your Honor, return good authorizations submitted, and Falcon put that forward as evidence of confusion. Isn't that pretty good evidence that somebody thought they bought a Falcon? Well, it's not evidence that they're confused about the trademarks themselves. Plus, the products are generic, right? Products are generic. They are generic. So if you were going to return this to Falcon to be fixed, what else would make you think it was a Falcon other than the mark? Well, there was no testimony from anybody who actually returned the parts that they were confused, and there was no testimony that they were confused. Isn't that enough to at least establish a jury question on confusion? If people send their parts back to Falcon to be fixed, doesn't that suggest that they thought it was a Falcon part? Well, I think there has to be a quantum of evidence of error. There's several handful of returns, but the amount of connectives being sold here, I think Falcon set a trial that they sold 8 million units. It may be pretty bad evidence. In other words, you have to convince me. So if one of the people who had returned them had taken the stand and said, I sent it back to Falcon because I thought this was a Falcon part, would that have been enough to get to the jury? Perhaps if the confusion was based on the trademark evidence. If the person took the stand and said, I looked at the diamond F, or I looked at the diamond S, the squared box S, and I thought it was Falcon's product mark, not Rhino's, then yes, I would agree that that would evidence some confusion over the trademarks. And similarly, if somebody took the stand and said, I had this connector here, and I looked at the product mark, and I thought it was Falcon's product mark, even though it had the Rhino number. But no one testified to that effect. There's no testimony in the record. So what we have is we have a number of return good authorizations. We have no testimony as to really why they were returned. Only speculation on the part of Falcon that they put before the jury. Help me with something on this. I read the judge's decision, and I thought it was pretty persuasive. And then I looked at the pictures. I wish I'd had more pictures, nice, big, clear inkjet prints of enlargements. But I looked at them to the extent I could. And to me, the marks don't look anything like each other, and no more like each other than Kodak and Agfa or Fuji. And I look at the part numbers, and I can't mix up FF34015 with SWF3415. I couldn't see how the jury could make the mistake that the judge says they did. But juries don't make mistakes out of the blue. So I need an explanation. If the evidence really is strong enough, even for that 50B standard, the evidence permits only one reasonable conclusion, and that conclusion is contrary to the jury's verdict, how could the jury have been so wrong? What led them astray? Well, one factor that the court considered, and it is in her alternative basis for granting a new trial, is that it's better to give the first jury instruction on the ability to copy unpatented goods freely. What instruction did she give, and what did she fail to give? That is important to me, and I haven't found it. She refused the instruction offered. And did she give anyone close to it? I've looked through the jury instructions since I asked the question. Did she give anything close to that? I don't believe so, Your Honor. I don't either. That's why I asked. And I may be mistaken, and an opposing counsel may stand up here and present the actual jury instruction that says that. But I did not find it. Could you give the excerpts, page numbers, if you have them right in front of you with the tape? I do not have the jury instruction excerpts. The jury instruction. Let me find the first page. Well, let's assume I'm right in reading them, that she didn't give that instruction. She did give an unclean hands instruction, did she not? She gave the instruction, but what was stricken from the special verdict form had a space for a finding of unclean hands. Right. And so my question is, having instructed the jury on unclean hands, you may find for the defendants, if you find it, the plaintiff had unclean hands. And then switching from the special verdict form to what you're calling a general verdict form here. It's a strange general verdict form because it's claim by claim. But in any event, why is that an error? All the instructions still applied. She didn't say to the jury when she switched from the special verdict form to the general verdict form, forget everything else I told you. No, she did not, Your Honor. So why weren't they properly instructed on unclean hands? Well, there's no dispute that that instruction was given, but by the same token, Judge Stotler thought the deletion on the verdict form that was ultimately given didn't allow the jury a place to find that the unclean hands defense applied. But that's true of all the defenses. There are various defenses in this case that she instructed the jury on that weren't included on the general verdict form. Abandonment, for example. So why does it make a big deal that this one wasn't in? I think it goes to the fact that this was the key defense in the case. It certainly was to the false advertising claims. Because Falcon had argued that a number of these ads were literally false. Rhino's defense to that was, look, this is tit-for-tat advertising. You're accusing us of certain literal falsities, but you're engaging in the same conduct. You know, your pipes don't meet the .01 thickness test. Your pipes were not all UPC certified. You're using 301 steel, not 304 steel. We say Rhino beats the bird, but your comeback response in advertising was nothing beats the bird. So if we're disparaging and you're doing the same thing, you're engaging in the same kind of conduct. Well, let me ask the question differently. If the judge had not, if you'd lost and we were up in appeal, you really couldn't claim that she erred by not again emphasizing unclean hands, could you? I don't know. Or by not giving the instruction that it's okay to knock off. Well, I think we would have objected on those bases. And you would have said that would have been a sufficient reason to reverse a jury verdict the other way? I don't know. I think Judge Stotler was in the position, the best position to judge that, having sat through the entire trial and then in response to the post-trial motions, having gone over the testimony, you know, there were ten days of testimony. And she gave a thorough, reasoned analysis. We've got roughly 100 pages of written opinion and factual findings therein. And her confession that she thought the failure to give those instructions tainted, at least potentially tainted what the jury came back with. So this is, in your view, just sort of, this is the judge saying, gee, the evidence doesn't convince me. And in addition, I'm worried that I failed to give the jury proper guidance. I think that's correct. As opposed to reversible error for not doing it. I think that's correct. Okay. So let's go back. I still want to go back to the sleek craft factors. The judge says there are some factors here that cut in favor of the plaintiff. She does. And there are other factors that cut in favor of the defendant. And the ones that cut in favor of the defendant strike me as stronger than the ones that cut in favor of the plaintiff. Tell me why that's a 50-B ruling. That's what I'm still struggling with here. They had, after all, you know, they had some evidence of a marketing campaign that seemed designed to produce confusion. The same salespeople, the same customers, close in time. A mark that I can tell the difference on, but I'm not sure if I'm buying truckloads of plumbing parts, that I've noticed a difference between a diamond and a square and then the things in the middle. Maybe a weak case, but why is it so weak a case that it shouldn't have gone to the jury? Well, let me focus on what plaintiffs have called the diamond F mark. It was not used in any advertising. It's not on their letterhead. It's not on their spec sheets. It's not on price sheets. It doesn't appear on their website. It appears nowhere. But the judge found there was a protective interest in it. She said as a matter of why you would assume that. Yeah, okay. So those are all arguments why their case isn't great. But tell me where the dividing line is where it doesn't go to the jury. That's the part of your case that I'm struggling with. Well, I'm okay with their new trial motions, or orders, I must say, but I'm having trouble with the JMOL on the mark. Not on the numbers description, I think. Let me ask you this. In her ruling, I understood she threw it out as a matter of law because there was insufficient evidence of confusion, not because the marks were unprotectable. Is that correct? That is, well, at least, yes, that is correct as to both the parts of the diamond F. Okay. So it really doesn't help us to focus too much on how protectable or unprotectable it is. We sort of assume that for the sake of discussion. But if there's no evidence that people are confused, then they lose. And there was no evidence that people were confused by the diamond F mark, and that is why I recited the fact that. Okay. The judge always brings up some people sent it back to the wrong place. But no one said because of the diamond. They didn't buy it because of the mark. They didn't even see the mark before they actually held it in their hand. And then when they get a box of connectors, all the boxes have labels on them that say the name of the company. So the problem is that they either are entitled to judgment as a matter of law or are not entitled to judgment as a matter of law. It turns on whether there was evidence of confusion. And your point is, and her argument was, I believe, there was no evidence of confusion at the point of purchase. No, there was no testimony. And no testimony was attempted to be elicited by plaintiffs as to the two large plumbing wholesalers, this Mark Irons of Ferguson and Roy Ramirez of Hijoka. Are you saying that the returns were not when they looked at a bolt and said, hey, wait a minute, this isn't a diamond F on here. Rather, they looked at the carton when it came into their factory, and instead of saying Falcon on the carton, it says Rhino or whatever that other name was? No, Your Honor, what I'm saying is there's no testimony as to what the reason was. There's no testimony as to whether it was through inadvertence, laziness, sloppiness. There is some testimony that some plumbing wholesalers. It could be any number of things. Sometimes people assume you want the cheapest, so they send you the cheapest. Yes, that is correct. And sometimes there's evidence in at least one case. There was no evidence on the buyers being confused? No, no buyers. And your position is in the absence of that evidence? None of the rest of the sleek craft factors matter? I think that would be the most compelling evidence. No, no, I'm asking a different question. I'm saying that if let's assume there's no evidence put on of confusion but evidence of other sleek craft factors put on, your position is then the case doesn't go to the jury? I think in this case that is not the only. No, I understand. I'm asking you for your legal position. Yeah, I think if there's no actual confusion, if there's proof there is. No actual evidence of confusion, and no matter how else, even if the other sleek craft factors are proved beyond a reasonable doubt, you don't get to the jury? No, I would not say that. In many cases there is no evidence either way of confusion. But I think in this case what we've got. But that's what I'm having to do.  didn't the district judge base this on the absence of confusion and isn't that enough to sustain her JMOL? And my question is, is that enough to sustain her JMOL if there's evidence of the other sleek craft factors? I think it would be. I'm struggling with perhaps the hypothetical would be if there were seven sleek craft factors in favor of one. Sure, let's assume the worst case in the world. People go out, make the mark exactly the same, go back to the same customers, purport to be selling the same thing, but their customers are really smart. And they look at these things and they say, hey, this ain't a Falcon, it's a Rhino, I'm going to buy it anyway. Do they have a line of mat case tickets to the jury? If there's no actual confusion at all, I would say no. So, whilst you're around here, but your answer to my question is yes. The absence of confusion just kills any line of mat case, no matter how otherwise strong. Is that right? I thought, well, Times Square now is Disneyland North, but back in the old days of Times Square, there were all these people selling fake Rolexes. And nobody buying one of those fake Rolexes for $10 or $25 thought it was really a Rolex. You're saying that Rolex could not sue the distributors of those fake Rolexes for trademark infringement, line of mat, whatever, because there was no confusion among the consumers? No, I would not say that. That would be a counterfeiting case or a palming off case. And I think in that case it would go to the jury, because you're creating confusion in the marketplace by walking around. And you're walking around with something that looks like a Rolex, so the people around you, you're creating a perception in the marketplace that you've got a Rolex. You're also potentially diminishing Rolex's sales. What's the difference? Well, here the difference is you've got test… Why is the absence of confusion decisive here and not in the Rolex case? It's not just the absence of confusion here. What you have is actual testimony from the people best placed, these two plumbing wholesalers, that say, we sell both, I see the parts numbers, I'm not confused by the difference. But we have, and it's probably my fault in asking the question. In the end, of course, we're trying to determine whether there's confusion, but one of the Sleekcraft factors, number four, is evidence of actual confusion. And Sleekcraft says that's a relevant factor to take into account, but there's also seven other relevant factors to take into account. Now, let's assume you're right, that there's no evidence of actual confusion, but that there's evidence of proximity of the goods and the type of goods and the degree of care liable to be exercised by the purchaser and the defendant's intent, et cetera. And the judge does say there's some evidence of all those. Why does the absence of actual confusion doom the case if there are seven other Sleekcraft factors? I think I'll have to step back. I don't know that it would. I think it would depend on the individual case. Do they have to prove damages as part of their case-in-chief? Do they have to prove damages? I believe they have to prove it in order to recover, Your Honor. Well, like in a tort case, you have to prove duty, breach, cause, and damage. You don't have damage, you get DVed out. Do they have to prove damages an element of their case to survive a directed verdict motion? I believe they would have to prove at least nominal damages. Can I understand Ms. Stotler's order as being they didn't prove any damages? Is that what she's saying? I think part of her order, in fact, is saying that. She's saying their expert witness, Dr. Safier, simply took the books and records of Falcon where they show a diminution of sales, and he incorrects it. Her reasoning, right, wrong, or otherwise, is that nobody didn't fail to buy a Falcon part because of something Rhino did wrong. Isn't that basically it? That is, Your Honor. Okay, thank you. I see you're out of time. Thank you. Judge, maybe you can start by telling me, did the judge give that instruction? I just noticed that we don't have the entire jury instructions attached to the exceptor record. I think I may have been reading the actual instructions that were being submitted at the time. So there's no exceptor record on that.  I looked at the one that was in the excerpts, it was kind of limited, and it looked like you just couldn't tell one way or another whether the jury could be led astray. And then the judge's discussion of the jury being hung and then a different verdict form being sent in, since I didn't have all the parts there, I couldn't totally follow it. But it looked like she was saying that they were, in fact, led astray. Well, Mr. Moore, who defendants actually called from Concept Plumbing, he did say that his clients or his workers got confused and shipped Falcon's pipes to Rhino for a refund because they were leaking. So there was some actual testimony that there was some confusion. Do you have to show that he was confused when he bought them or confused when he shipped them back? Confused when he shipped them back because that's a misdirected return. We know what that is, but is that sufficient to prove the case or do you have to prove that it was confusion at the point of purchase? Usually there are no instances of actual confusion, but when there are, it's a very important issue to focus in on. I don't know what that proves exactly, that they sent it to the wrong place. They send stuff back to the wrong grocery store or department store all the time because they forget where they bought it. And it's easy to see why with good Falcon stuff and not as good Rhino stuff, if something leaked, people would figure it was Rhino and send it to Rhino. Especially when it's sold by the same guy who used to sell Falcon. Right. Well, it wasn't just one instance of misdirected returns. There were numerous misdirected returns and numerous products that Morris Company sent back to Rhino that belonged to Falcon. So your argument is there was evidence of actual confusion? Yes, Your Honor. In the absence of evidence of actual confusion, does the case still go to the jury if the other sleep-craft factors are demonstrated? Yes, it does, Your Honor, because in this court's decision on DSPT versus Nahum 624 F3RD 1213, this court held that the evidence of likely confusion can be presented to the jury. So you can put the purchase orders that were misdirected, and you could also put the actual types that were misdirected and allow the jury to inspect all this evidence and come to the conclusion of whether there was a likelihood of confusion among consumers. Can you address the question that Judge Silverman asked? Let's assume that the judge below said, I didn't buy your damages expert. I don't think you've proved any actual monetary damages. Would that doom your claim? No, it would not, because under the Lanham Act, Section 1117, all we have to show is what their profits were. And once we show what their profits are, it's their duty to then come back and apportion damages. And they didn't do that. So in the judge's order, and actually in their response, they say that the jury awarded $1.1 million, which was about the same amount that Dr. Sapphire had estimated to be their profits. So there is a line that can be drawn directly that supports the jury's conclusion of damages. In addition, in the DSPT case, this court said that the jury themselves can actually look at the sales and determine what damages would be, because in that case, the plaintiff was claiming that they were selling $1.2 million worth of goods before their EQ trademark was being infringed, and that they lost all those sales. And at 20 percent profit, the jury came back and said, we're not going to give you 20 percent, but we'll give you 10 percent, and they gave $109,000. Let me just think out loud for a second. Suppose we affirm Judge Stotler's order granting a new trial. Just hypothetically, what happens then? It goes back, put on the same evidence, comes time for the close of the plaintiff's case. I guess she would not be able to throw the case out at that point if it's the same evidence, because we would hold that there's enough evidence to support the judgment in theory, entitled to judgment as a matter of law. And they put on their case, just as they did before. And then this time around, she would give an instruction that says a knockoff is not illegal, and she'd make sure the verdict form has the unclean hands business out there. So it's basically just a rerun with a new shuffle deck. New jurors, is that it? Basically, Your Honor. And I think on the patented copying on patented products, that's really harmless error. And on the – It wouldn't – that's the point. It would be harmless error if you were appealing on it. But the judge says, I'm there, and I think maybe the plaintiff's arguments led them astray in this one, so I should have been more careful to tell them that. So she's going to tell them the next time if we send it back. That's what Judge Sullivan is asking you. I suppose the second time, if she thought it was against the weight of the evidence, she could grant that motion again, but that would be appealable. Right, but we don't believe that we made any claims that the product was patented or that they couldn't copy it. We were saying that they copied the product, but we're claiming that they met industry minimum law thickness standards, which is another issue that she ignores. Regardless of how you phrase your arguments, Well, they were not constructing erroneous theories because there was plenty of evidence. How do you know? We actually spoke to the jurors. How the jury managed to get it so wrong? We actually spoke to the jurors, and they said the reason why the – that hung up was because one person on the jury who didn't even have a high school degree was arguing significant digits with an engineer who was on the jury. And that's why the judge had to then give a simplified version of the verdict form so that she could understand what the verdict form was. But they told us, even on the original verdict form, the six members of the jury, not the one with not even the high school degree, told us that if the judge kicked back to them, without this person on the jury, given this $3.6 million. Aside from the problem of what's in the record, it really doesn't explain at all how anything the judge could have done differently or better would prevent the same mistake from happening if it wasn't a mistake. People are allowed to be on juries even though they don't have high school diplomas, and they're allowed to do arithmetic even though they don't have high school diplomas. I was trying to figure – usually a jury has some reason for what it does, and if you've been involved in the trial, you can see what the reason is. The judge thinks the reason is the verdict form and the absence of an instruction about the drop-offs, I think, but I'm not sure. I think that's what she thinks. Is there anything else in the record that I overlooked that would explain how the jury could mess this up? Well, they did not mess this up, Your Honor. They actually relied on the issue that Mr. Novello was destroying evidence of even further confusion. Well, you don't think they messed it up. No, they didn't. You think they did it just right. They absolutely did, Your Honor. He thinks they messed it up. Well, he's entitled to his opinion. Your answer is they didn't mess it up. But once we went to Judge Goldman, who is a magistrate judge, we told him to preserve evidence, and once he preserved evidence, in one month we had at least 22 misdirected orders that even said Falcon on them. They didn't just say SWC 112. They said Falcon orders. So they were receiving all these Falcon orders throughout the years that he just destroyed all this evidence, and he actually perjured himself numerous times. So the judge comes back and is relying on Mr. Novello's testimony, who the jury did not have to believe, and that's one of the issues under the JMLL factors. And he kept perjuring himself, destroying misdirected and returned items. And now you're making a jury argument, and I think you're out of time. Thank you, Your Honor. Thank you, Mr. Anderson. Thank you, gentlemen.
judges: Kleinfeld, Silverman, Hurwitz